UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RENE H. MANLAPIG, et al.,                          :
                                                   :
                                       Plaintiffs, :
                                                   :
                  -against-                        :
                                                   :
JEREMY HORACE JUPITER, et al.,                     :
                                       Defendants. :
                                                   :
------------------------------------------------------------ X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/06/2016
```

14 Civ. 235 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

Plaintiffs Rene H. Manlapig and Maristella Manlapig move under Federal Rule of Civil

Procedure 59 for an order to set aside the May 11, 2016, jury verdict in favor of Defendants

Jeremy Horace Jupiter, A. Anastasio & Sons Trucking Company, Inc., A. Anastasio & Sons

Trucking Co. 1 and the Anastasio Group (collectively, "Defendants"), and for a new trial.  For

the following reasons, Plaintiffs' motion is DENIED.

I.      **BACKGROUND**

On January 13, 2014, the Manlapigs filed suit against Defendants for injuries arising

from a motor vehicle accident that occurred in July 2012 on the upper level of the George

Washington Bridge.  By order and opinion dated August 11, 2014, Plaintiffs' summary judgment

motion on the issue of liability was granted.  Beginning on May 4, 2016, a six-day jury trial was

held solely on the issue of damages -- whether Rene H. Manlapig was entitled to compensatory

damages, whether his wife Maristella Manlapig was entitled to loss of consortium and society

damages, and whether Defendants were subject to punitive damages.

On May, 11, 2016, the jury returned a verdict in favor of Defendants.  Specifically, the

jury's verdict sheet found that Mr. Manlapig did not suffer a "serious injury" under New York

law as a result of the July 17, 2012, accident because he did not suffer either (1) a permanent

consequential limitation of use of a body organ or member, (2) a significant limitation of use of a

body function or system or (3) a medically determined injury or impairment of a non-permanent

nature that prevented him from performing substantially all of the material acts which constituted

his usual customary daily activities for not less than 90 days during the 180 days immediately

following the accident.  *See* N.Y. Ins. Law § 5012(d).  In response to a separate question, the jury

found that Rene H. Manlapig was not entitled to any damages for future medical expenses.

On June 14, 2016, Plaintiffs filed the instant motion to set aside the jury verdict and for a

new trial.

## II.     STANDARD

Rule 59 of the Federal Rules of Civil Procedure provides in relevant part that "[t]he court

may, on motion, grant a new trial on all or some of the issues – and to any party – . . . (A) after a

jury trial, for any reason for which a new trial has heretofore been granted in an action at law in

federal court."  Fed. R. Civ. P. 59(a)(1).  "'A motion for a new trial should be granted when, in

the opinion of the district court, the jury has reached a seriously erroneous result or . . . the

verdict is a miscarriage of justice.'"  *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 146 (2d

Cir. 2012) (quoting *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1047 (2d Cir. 1992)); *accord Manley

v. AmBase Corp.*, 337 F.3d 237, 245 (2d Cir. 2003).  An order for a new trial may be grounded

on findings, inter alia, "that 'the verdict is against the weight of the evidence, that the damages

are excessive, or that, for other reasons, the trial was not fair to the party moving.'"  *Santa Maria

v. Metro-N. Commuter R.R.*, 81 F.3d 265, 273 (2d Cir. 1996) (quoting *Montgomery Ward & Co.

v. Duncan*, 311 U.S. 243, 251 (1940)); *see also* 11 Charles A. Wright & Arthur R. Miller,

Federal Practice & Procedure § 2805 (3d ed. 1998) (noting the broad terms in which Rule 59(a)

is stated and observing that courts have ordered new trials for "[a]ny error of law" or findings

"that the verdict is against the weight of the evidence, that the verdict is too large or too small, that there is newly discovered evidence, that conduct of counsel or of the court has tainted the verdict, . . . that there has been misconduct affecting the jury," or "that the verdict was based on false testimony").  A motion for a new trial may also "raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co.*, 311 U.S. at 251.

Rule 59(a) motions are "committed to the sound discretion of the district court . . . ." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 143 (2d Cir. 1998); *accord Lessoff v. Metro-N. Commuter R.R.*, No. 11 Civ. 9649, 2014 WL 1395022, at *2 (S.D.N.Y. Apr. 10, 2014).  "'It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple. . . .'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks omitted) (quoting *Sequa Corp.*, 156 F.3d at 144).

## III.    DISCUSSION

Plaintiffs' motion raises three arguments for setting aside the verdict and obtaining a new trial.  First, Plaintiffs claim that defense counsel's "repeated inflammatory and prejudicial comments" during the trial deprived Plaintiffs of their right to a fair trial.  Second, Plaintiffs argue that the jury's finding that Mr. Manlapig did not suffer a serious injury as a result of the July 17, 2012, accident was against the great weight of credible evidence.  Finally, Plaintiffs argue that the Court made a fundamental error when it obtained the jury's verdict with respect to future medical expenses.  Each of Plaintiffs' arguments is without merit.

### A. Defense Counsel's Conduct at Trial

Plaintiffs argue that they were denied a fair trial because of defense counsel's "repeated inflammatory and prejudicial comments." Specifically, Plaintiffs fault defense counsel for (1) suggesting that Mr. Manlapig visited a neurosurgeon, Dr. Richard Radna, M.D., at the behest of Plaintiffs' counsel, (2) suggesting that Mr. Manlapig underwent spinal surgery for the purpose of litigation, (3) misrepresenting that Plaintiffs sought punitive damages, which would "bankrupt" defendants, only because Plaintiffs' case for compensatory damages was weak and (4) improperly attacking the education and qualifications of Mr. Manlapig's treating chiropractor, Dr. Gary Cullin, D.C.

Plaintiffs' arguments are unavailing for two reasons. *First*, any prejudice from defense counsel's "inflammatory" statements was mitigated by the Court's instructions to the jurors that they should base their decisions on the evidence alone, and not on any statement made by an attorney. Both at the beginning and end of trial, the Court specifically instructed that "[w]hat the attorneys say in their opening statements, in their questions, in their closing arguments, in their objections, are not evidence" and "[a]rguments made by the attorneys are not evidence." A new trial would therefore be warranted only if counsel's conduct was so inflammatory or prejudicial that it was unlikely the jury could follow the Court's instruction on what constitutes evidence. *Second*, each of the comments Plaintiffs challenge as extremely prejudicial was either proper or, if not, sufficiently addressed during trial.

### i.    *The Timing and Reason for Plaintiff's Back Surgery*

With respect to the alleged "insinuation" that Plaintiffs' counsel directed Mr. Manlapig to Dr. Radna for the purpose of litigation, this evidence and argument were entirely proper and not subject to exclusion under Rule 403, which provides that "[t]he court may exclude relevant

evidence if its probative value is substantially outweighed by a danger of. . . unfair prejudice,

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

cumulative evidence."  Fed. R. Evid. 403.  Mr. Manlapig admitted on cross-examination that at

the time of his deposition in September 2014 he did not have plans to have any surgery; that

shortly after the deposition he received from defense counsel a surveillance video showing him

apparently pain free and repairing and riding a bicycle; and that a couple of weeks later, based on

his lawyer's referral, he visited Dr. Radna who subsequently performed back surgery on

Plaintiff.  Defense counsel then used this testimony to argue in summation that Mr. Manlapig's

alleged injuries were exaggerated, that the surgery was unnecessary and had been undertaken to

bolster Plaintiffs' case.  This evidence is probative and not prejudicial in any improper way.  *See*

*Old Chief v. United States*, 519 U.S. 172, 180 (1997) (quoting Rule 403 Advisory Committee's

Notes for the proposition that "'[u]nfair prejudice' within its context means an undue tendency to

suggest decision on an improper basis, commonly, though not necessarily, an emotional one'").

The evidence was therefore admissible under Rule 403, and the related argument was proper.

To the extent that Plaintiff objects that the argument was factually incorrect and contrary

to other evidence, the characterization of evidence is the grist of closing argument.  The Court

instructed the jury several times about the importance of their recollection of the evidence and

specifically said: "Arguments made by the attorneys are not evidence.  If your recollection of the

facts differs from the statements made by attorneys in their arguments, then it is your recollection

that controls."

Plaintiffs' counsel apparently misinterprets the Court's rulings regarding this testimony.

The Court gave a curative instruction and directed the jury to disregard defense counsel's

argument in the opening statement as to why Plaintiff had back surgery, not because the

argument was "inflammatory," but because only evidence, and not argument or inferences based on the evidence, are appropriate for comment in an opening statement. *See Jordan v. Binns*, 712 F.3d 1123, 1134–35 (7th Cir. 2013) (affirming district court's instruction that counsel was "not to argue" during opening statements but instead "say what his evidence will prove"); *United States v. Yakobowicz*, 427 F.3d 144, 150 (2d Cir. 2005) ("Opening statements are generally confined to expectations as to what the evidence will show and usually do not contain large amounts of argument."); *United States v. Salovitz*, 701 F.2d 17, 21 (2d Cir. 1983) ("The function of an opening statement is merely to 'state what evidence will be presented'. . . ."). The Court explained this rationale to the jury, and to Plaintiffs' counsel following his post-opening motion for a mistrial.

Similarly, the Court attempted to exclude references to Plaintiffs' counsel, Mr. Israelyan, by name so that the jury would not necessarily know that the lawyer referring the surgeon was Plaintiff's trial counsel rather some other attorney for Plaintiff. The Court explicitly asked counsel outside the presence of the jury not to "personalize" the question by using Mr. Israelyan's name. This ruling was not based on the "inflammatory" nature of naming Plaintiff's trial counsel, but to avoid the possibility of turning him into an uncalled witness or potentially subjecting him to disqualification. *See generally* New York Rule of Professional Conduct 3.7 (prohibiting an attorney from acting as advocate before a tribunal if he is likely to act as a witness unless enumerated conditions are satisfied); ABA, *Model Rules of Professional Conduct*, Rule 3.7 (2014).

### ii.     Punitive Damages

Defense counsel's comments concerning punitive damages and whether those damages would bankrupt Defendants also do not merit a new trial.  Plaintiffs challenge defense counsel's argument in opening statement that a claim for punitive damages was brought because Plaintiffs' claim for compensatory damages was weak.  The Court sustained the objection not because the argument was improper, but because it was argument and therefore premature in the opening statement.  *See Yakobowicz*, 427 F.3d at 150.

Plaintiffs challenge defense counsel's statement because it somehow "cast doubt" on the Court's pre-trial decision that the jury would not reach punitive damages if it did not first find that Mr. Manlapig suffered a serious injury.  Plaintiff's argument is confusing and, in any event, without merit.  The jury instructions informed the jury that "[a] plaintiff must prove a serious injury by a preponderance of the evidence before a jury can award him damages for pain and suffering or other nonmonetary harm resulting from a motor vehicle accident," and the verdict sheet's organization prevented the jury from reaching the punitive damages questions if it did not first find that Mr. Manlapig suffered a serious injury.

Plaintiffs also challenge the defense statements in summation concerning punitive damages.  During his closing, defense counsel argued:  "There is no evidence from Mr. Jupiter that supports your award of punitive damages that could bankrupt his company."  He later stated that Plaintiffs' counsel was "going to ask you to award punitive damages to perhaps bankrupt my client's company."  Plaintiffs maintain that these statements are prejudicial and improperly appealed to the jury's sympathy by asserting that an award of punitive damages would bankrupt Defendants because they (and not an insurance company) would have had to pay those damages. This argument is rejected for two reasons.  First, the jury instructions directed the jurors not to be

swayed by sympathy, and to consider only the evidence in reaching their decision.  Second, the

jury never reached the question of punitive damages on the verdict sheet, because they

determined first that Mr. Manlapig did not suffer a serious injury from the July 17, 2012,

accident.  Consequently, it is highly unlikely that the jury considered the impact on Defendant of

any large punitive damages award.

### iii.   Dr. Cullin's Qualifications

Plaintiffs' last argument concerning prejudice is that defense counsel improperly

"denigrated" Dr. Cullin, Mr. Manlapig's treating chiropractor, by stating that he was "not even

qualified to read an MRI," that he "didn't even have a high school degree" and "didn't even have

a college degree."  Defense counsel made each of these comments during summation, based on

the evidence -- i.e., Dr. Cullin's own testimony.  Specifically, Dr. Cullin testified that he

obtained a general equivalency degree ("GED") in lieu of completing high school; he never

completed "college" or medical school but instead obtained his degree from Palmer Chiropractic

School; and he was never certified to read MRIs.  Although Plaintiffs are correct that Dr. Cullin

also testified about the reasons he received a GED, his training as a chiropractor and his

experience reading MRIs, defense counsel was permitted to argue, as he did, that Defendants'

medical experts were more qualified, and that the jury should therefore credit their testimony

when it conflicted with Dr. Cullin's opinions.

"'Not every improper or poorly supported remark . . . irreparably taints the proceedings;

only if counsel's conduct created undue prejudice or passion which played upon the sympathy of

the jury, should a new trial be granted.'"  *Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 127

(2d Cir. 2005) (quoting *Matthews v. CTI Container Transp. Int'l, Inc.*, 871 F.2d 270, 278 (2d

8

Cir. 1989)).  The conduct of defense counsel described above -- viewed in isolation or taken as a whole -- was not prejudicial or inflammatory to the point where a new trial is necessary.

**B. Weight of Evidence**

Plaintiffs next argue that the jury's verdict that Mr. Manlapig did not suffer a "serious injury" was contrary to the "greater weight of evidence."  As explained below, ample evidence supported the jury's findings.

Under New York law, Plaintiffs were required to prove a "serious injury" by a preponderance of the evidence before the jury could award him damages for pain and suffering or other non-monetary harm.  *See* N.Y. Ins. Law § 5104(a); *Kabir v. Cty. of Monroe*, 945 N.E.2d 461, 463 n.2 (N.Y. 2011).  The statute defines "serious injury" as:

> personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of a use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairments of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

N.Y. Ins. Law § 5102(d).

In arguing that the jury's verdict with respect to the serious injury finding was against the weight of credible evidence, Plaintiffs' motion merely recites trial testimony from their own witnesses that sought to establish that Mr. Manlapig was either unable to perform his usual and customary duties after the accident, or had suffered a significant limitation of the use of his spine.  There is no dispute that Plaintiffs' witnesses at trial testified as to facts that, if credited, would have permitted the jury to find that Mr. Manlapig suffered a serious injury.  Nevertheless, it is the jury's duty to assess the credibility of Plaintiffs' witnesses and the strength of their

testimony.  Their defense verdict made plain that they credited instead Defendants' contrary

expert testimony -- medical and biomechanical.  In that light, the jury's verdict was not against

the weight of credible evidence.

At trial, Defendants elicited testimony both from Plaintiffs' own witnesses and

Defendants' experts that any spinal injuries Mr. Manlapig suffered were either minor or not

proximately caused by the July 17, 2012, accident.  For example, Defendants elicited testimony

from Plaintiffs' witnesses suggesting that Mr. Manlapig's back injuries may have been merely

continuations of conditions that pre-existed the accident.  On cross-examination, Mr. Manlapig

admitted that he had had intermittent or occasional back pain since 2007, years before the

accident.  Mr. Manlapig's treating physician, Dr. Radna, confirmed that Mr. Manlapig had been

prescribed anti-inflammatory and pain medications for back pain before the accident.

Similarly, the jury heard testimony from each side as to why Mr. Manlapig did not

complain of back pain when taken to the emergency room on July 17, 2012.  Immediately after

the accident, the hospital records indicated that Mr. Manlapig did not complain of any back pain,

and complained only of neck pain.  Dr. Gregory Montalbano, M.D., an orthopedic surgeon and

Defendants' expert, testified that the records further indicated that the physicians reported

"minimal tenderness in the lower cervical spine," no documented muscle spasms or loss of

motion and a "normal examination . . . for the lumbar spine."  Although Plaintiffs' witnesses

testified that the pain in Mr. Manlapig's neck "masked" the pain he would have felt in his back,

Dr. Montalbano disagreed.  The jury heard testimony on these issues from both sides, and was

free to decide which party's evidence was stronger on the issues of causation and serious injury.

In addition to hearing conflicting testimony from the parties' witnesses, the jury viewed

surveillance tapes of Mr. Manlapig after the accident.  In the first, as described above, he was

repairing (or performing maintenance) on bicycles, riding a bicycle and performing chores

outside of his home that involved his bending, squatting and lifting.  In the second, he was taking

the cover off of his car.  The jurors were also able to assess Plaintiffs' demeanor and credibility

when both Mr. and Mrs. Manlapig took the stand to explain how the accident had affected Mr.

Manlapig's health and ability to perform daily activities in the months following the accident.

It is axiomatic that "[c]redibility determinations, the weighing of the evidence, and the

drawing of legitimate inferences from the facts are jury functions."  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 255 (1986).  Due to the abundance of evidence supporting the jury's finding

that Mr. Manlapig did not suffer a severe injury as a result of the July 17, 2012, accident,

Plaintiffs' motion to set aside the verdict on this ground is denied.

### C. Jury Verdict as to Future Medical Expenses

Finally, Plaintiffs argue that the Court committed fundamental error in accepting the

jury's verdict when they had not filled in an answer to Question No. 4 on the verdict sheet, which

dealt with damages for future medical expenses.  This argument is rejected.

Plaintiffs' speculation that the jury neither deliberated nor answered Question No. 4 is

belied by the wording of the question itself, and the colloquy that took place when the Court read

and confirmed the jury's verdict.  In full, Question No. 4 directed the jury as follows: "State the

amount of damages, if any, awarded to the plaintiff, Rene H. Manlapig, for medical expenses to

be incurred in the future and the number of years over which such amount is intended to provide

compensation."  The jury's decision to leave that page of the verdict sheet blank is entirely

consistent with the question's explicit instruction, which required the jury to state an amount

only if there was an award for future medical expenses.

11

Plaintiffs' assertion that the jury was confused in failing to write anything in response to

Question No. 4 is wholly speculative and contrary to what was confirmed at the reading of the

verdict.  As an initial matter, the wording and organization of the verdict sheet resulted in part

from Plaintiffs' objection to Defendants' proposed verdict sheet that included the following

language:  "If you decide not to make an award as to any item, you will insert the word 'none' as

to that item."  Before trial, Plaintiffs argued that Defendants' proposed language improperly

"suggested" to the jurors that it could award zero damages even if they determined that Rene H.

Manlapig had suffered a serious injury as a result of the July 17, 2012, accident.  Citing case law

for the proposition that "a jury verdict will generally be considered flawed when a serious injury

under the No-Fault law is found or conceded, but the jury then makes no award for pain and

suffering," *Zgrodek v. McInerney*, 876 N.Y.S.2d 227, 229 (3d Dep't. 2009), Plaintiffs argued that

the verdict sheet should not mention the word "none" whenever the verdict sheet asked the jury

to quantify damages.  The Court accommodated Plaintiffs' objection by deleting Defendants'

proposed language and adding the phrase "if any" in the questions concerning damages.

Question No. 4 could not have been worded more clearly without including a further instruction

that Plaintiffs would have considered "suggestive."

In any event, nothing in the jury's answers suggests that it was confused by the verdict

sheet.  Because the jury answered the first three questions (concerning serious injury) in the

negative, its decision to leave Question 4 blank is entirely consistent with its finding that Mr.

Manlapig did not suffer a serious injury.  *See Crocket v. Long Island R.R..*, 65 F.3d 274, 278 (2d

Cir. 1995) ("'[O]ur responsibility as a reviewing court is to adopt a view of the case, if there is

one, that resolves any seeming inconsistency' between the jury's answers."); *McGuire v. Russell

Miller, Inc.*, 1 F.3d 1306, 1311 (2d Cir. 1993) ("A district court has a duty to reconcile the jury's

answers on a special verdict form with any reasonable theory consistent with the evidence, and to

attempt to harmonize the answers if possible under a fair reading of those answers.").

As Plaintiffs concede, the Court specifically polled the jury as to whether its answer to

Question No. 4 was purposefully left blank, and if that meant "zero":

> THE COURT: So I will read the verdict form.
> Question No. 1.  The answer is no.[1]
> Question No. 2.  The answer is no.
> Question No. 3.  The answer is no.
> Question No. 4 is blank.  And all of the remaining questions are blank.  And the
> signatures are filled in.  A question I have for the foreperson.  It's a yes-or-no
> question.  So after question three you were to go to question four.  Does this mean
> your answer to question four is zero?
> JUROR:  Yes.
> THE COURT:  Which is future medical expenses?
> JUROR: Yes.
> THE COURT:  Is that true everyone?  You can nod your heads.  So I'm going to
> fill in zero for question four.  And I will poll the jury now.
> (Jury polled; each juror answered in the affirmative)

Plaintiffs' argument that it is unclear whether the jury considered or deliberated on

Question No. 4 is contradicted by the language of the question and the trial transcript.  Because

there was no error in determining the jury's verdict, Plaintiffs' motion to set aside its verdict on

this ground is denied.

---

[1]      As noted above, the jury's answers to Questions 1–3 reflected their findings that
Manlapig did not suffer either (1) a permanent consequential limitation of use of a body organ or
member, (2) a significant limitation of use of a body function or system or (3) a medically
determined injury or impairment of a non-permanent nature that prevented him from performing
substantially all of the material acts which constituted his usual customary daily activities for not
less than 90 days during the 180 days immediately following the accident.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' motion is DENIED.  The Clerk of Court is directed

close the motion at Dkt No. 173.  The Clerk of Court is directed to enter judgment in favor of

Defendants and close the case.


SO ORDERED.

Dated:  September 6, 2016
        New York, New York

                                          **LORNA G. SCHOFIELD**
                                    **UNITED STATES DISTRICT JUDGE**

14